MCCURDY *v.* SCHOOL DISTRICT NO. 1 OF WEST BRANCH
TOWNSHIP.[1]

SCHOOL-DISTRICT BONDS—DELIVERY.

*The defendant school district voted to raise by bond $3,500
to enlarge its school building. At a meeting of the school
board, one F., its assessor and treasurer, a member of a
banking house, offered to correspond with M. and others for
a sale of the bonds. To this the board assented. F. wrote
M., informing him what the district had done, and solicited
a bid. M. replied by letter, making an offer, which was sub-
mitted to the board, and accepted. July 5th, M. sent F. a
check for $3,535. Being informed by return mail that this
was not sufficient, he sent balance July 7th. The board was
informed that F. had received the money. F. deposited the
money in his bank under an account styled "Bond Ac-
count." These bonds, and others amounting to $6,300, which
were also purchased by M., constituted the only bond account
F. had in the bank. Some time before July 12th the bonds
were duly signed, and delivered to F. for delivery to M. M.
had written F. to hold the bonds, when received, subject to
his order. F.'s bank failed July 22d. The money received
from M. was gone, and the bonds were found in the bank,
and on the day after the failure were handed by F.'s assignee
to the school district. *Held,* that the bonds were duly
delivered, and that, as between two innocent parties, the
school district must suffer. MONTGOMERY, C. J., dissenting
on the facts.

Appeal from Ogemaw; Kelley, J., presiding. Sub-
mitted December 6, 1900. Decided July 2, 1901.

Bill by Hugh McCurdy against school district No. 1 of
the township of West Branch, Casper L. Nauman, Lean-
der A. White, Myron H. French, Fannie A. Clark, and
Curtis J. Winslow to compel the delivery of certain bonds.
From a decree for complainant, defendant district appeals.
Affirmed.

[1] Rehearing denied November 4, 1901.
* Head-note by GRANT, J.

*Hall & Brockway* (*Benton Hanchett*, of counsel ), for complainant.

*Simonson, Gillett & Courtright* (*Watts S. Humphrey*, of counsel ), for appellant.

Montgomery, C. J. (*dissenting*).  The question to be determined in this case is, Which one of two innocent parties shall suffer through the default of a third party ? The bill is filed to compel the delivery to complainant of bonds amounting to $3,500, for which complainant claims to have paid.  In the summer of 1898, M. H. French was assessor of the defendant school district, and also a member of the banking firm of M. H. French & Co.  M. H. French & Co. became insolvent July 22, 1898.  On June 11, 1898, the school board determined that it was necessary to enlarge the school building, and called a meeting of the electors, who, on June 18th, voted to issue bonds for $3,500.  On June 21st the board met at French's bank, determined that the proposition to issue bonds had been duly adopted, and appointed trustees Nauman, Winslow, and White a building committee, to supervise the work of making the enlargement.  At this meeting French volunteered to correspond with different institutions and persons, to see if he could make a sale of these bonds, and on what terms.  At the same time another member of the board — defendant White — volunteered to see that the other local bank should also make inquiries for the same purpose.  The same day, French opened a correspondence with complainant, asking the latter if he could handle the $3,500 bonds, and also an issue of $6,000 of bonds which he expected would be refunded.  McCurdy did not know that French was a member of the school board, and the correspondence was carried on by French in his private capacity, as a member of the banking firm of M. H. French & Co.  McCurdy wrote that he could handle all the bonds, asked French to help him in getting them, and offered to pay French for his services in so doing. During the course of the correspondence, French was very

active in advising and assisting McCurdy, and received a check for $25 for his services.

The result of the correspondence was that McCurdy made an offer, which French submitted for him to the board, and which they accepted. The offer was in writing, and stated that French was authorized to represent McCurdy in negotiating for the bonds. McCurdy still knew nothing of the fact that French was a member of the school board. The bill of complaint states that he had no knowledge of this until the 27th of July,—a month later. The resolution accepting McCurdy's offer, which was passed at a meeting of the board held on June 30th, provided that "the moderator, director, and assessor be, and they are hereby, authorized and directed to issue the $3,500 in bonds, * * * and deliver the same to said Hugh McCurdy, on receiving from him the said sum of $3,500, with one-half of one per cent. premium." At this same board meeting on June 30th, steps were taken to submit the proposition to refund the $6,000 bonds to the electors of the district at the annual meeting held on July 11th. This was done, and the proposition adopted. The board thereupon met on July 12th, and passed a resolution providing that "the moderator, director, and assessor be, and they are hereby, authorized to issue new bonds, * * * and deliver the same to Hugh McCurdy," etc., as above. Steps were at once taken to prepare the bonds. McCurdy had meanwhile written several letters to French, asking when the bonds would be ready. On July 5th he sent French a check for $3,535; on or about July 7th a check for $140, to make up the premium due; and on July 10th a check for $6,300. On receipt of the latter, French wrote that the director had the new bonds nearly ready. The checks so received were credited on the books of M. H. French & Co. to an account called "Bond Account," which was opened for this purpose. There was already an account on the books in the name of M. H. French, assessor, to which were credited all amounts held by French in his official capacity. None of this last fund

was ever drawn out by check. It was only paid out on warrants signed by the moderator and assessor. None of the sums received from McCurdy ever appeared in this last account.

A few days before the board voted to refund the $6,000 bonds, French wrote to complainant, suggesting that he could get a 6 per cent. investment for his $6,000 at once by taking the bonds that were to be refunded, and holding them until the new bonds were issued. These bonds were held at that time by the Wayne County Savings Bank, of Detroit. Complainant adopted the suggestion, and sent French the $6,300 check for the purpose of making this arrangement. .French himself did not write to the Wayne County Savings Bank in regard to the matter, but asked defendant L. A. White, who was director of the board, to do so, at the same time giving him a draft for $6,251.84, which was the amount due the Wayne County Savings Bank. White did as directed, and the old bonds were sent to him from Detroit. This transaction between French and White was a personal, and not an official, matter. The board had taken no action authorizing it. It was not arranged by White, but was entirely at French's solicitation, and in order to carry out his promise to McCurdy. All this was done by McCurdy's direction, for his benefit, and because all the parties expected, as a matter of course, that the bonds would be refunded. The $6,251.84 was charged on French's books to the bond account. No entry in regard to it appears in any of French's official accounts or reports as assessor.

At some time between June 30th and July 14th, the director prepared the forms for both issues of bonds, signed them himself, and left them at French's bank, to be signed by the moderator, defendant Nauman. The two issues of bonds were in separate packages, rolled up, and covered with paper. They were left with the clerk at the bank at different times, but French paid no particular attention to them, did not know when they came

to the bank, and did not open the packages. The $3,500 bonds were left at the bank shortly after June 30th. The $6,000 bonds were left there on the 14th of July. On the 14th of July—the date on which the $6,000 bonds were left at the bank to be signed—French's clerk notified him that there was a roll of bonds there for Nauman to sign. French did not open the bundle, or examine them, but told his clerk to take them out, and have them signed by Nauman. He did so, and on his return the package was put in the vault, still unopened and unexamined by French. This roll in fact contained the $6,000 bonds. But French supposed that they were the other issue, and therefore wrote to McCurdy on the same day that the $3,500 bonds were ready. He did not know at that time that more than one package of bonds had been left at the bank, and, supposing that the $3,500 issue would be left there first, wrote McCurdy that the others were not yet completed. A few days later, French saw another package of bonds on the clerk's desk. These were in fact the $3,500 bonds, which had been left there some time before, but French supposed them to be the $6,000 bonds, and so refers to them in his testimony. French did not examine this package, but was merely told by the clerk that it contained bonds. Supposing that they were fully executed, he told the clerk to put them in the vault with the others. He had no definite idea when or by whom they had been left at the bank, and asked no questions of the clerk, but took it for granted that they were the $6,000 issue, fully completed. He did not send any further notice to McCurdy. He had not told the school board that he had the money for the $3,500 bonds, and neither White nor Nauman knew of it, as the evidence impresses me.

On July 22d, while matters were in this condition, French closed his bank, and confessed his insolvency. The bank was placed in charge of a trustee for certain creditors. The bonds were taken out of the vault, taken to French's house, and there delivered to White. When

White opened the packages, he found both issues of bonds, but claims that the $3,500 issue were still unsigned by the moderator, and that they were not signed until July 23. The $6,000 bonds were afterwards delivered to complainant, but the board refused to deliver to him the $3,500 bonds, on the ground that neither the school district nor any of its officers or agents had received payment therefor.

It was a controverted question of fact on the trial in the court below whether the $3,500 bonds were signed by the moderator before the failure. The complainant and his solicitor, Hon. De Vere Hall, testify that on the 27th day of July the moderator, Nauman, admitted to them that these bonds were signed before July 11th. Nauman disputes this, and both he and the director testify that the $3,500 bonds were received by the director, Mr. White, from the trustee of the bank, on the 22d of July, and that they had not then been signed by the moderator; that they were taken in this state to the office of Mr. White, and, on the 23d, were signed by Mr. Nauman, in White's office. This testimony is corroborated by another witness. If the case were to turn upon this question of fact solely, I should hesitate to say that the conclusion of the circuit judge, who saw the witnesses, and who found in favor of complainant, should be overturned. But there are other reasons, which are to me decisive, why I am unable to find that these bonds were delivered to take effect prior to the failure. There can be no doubt that the money, when first received by French, was received by him as the agent of complainant. Had the school district been an individual, and had the money been paid over by French before receiving the securities, there can be no doubt that French would have been liable to his principal. It is equally clear that, if French had attempted, when he first received the money, to appropriate it to the school district, he would have violated his duty to his principal. It was not contemplated by complainant that the money should find its way into the hands of the district until the bonds

were delivered. French deposited it in a bank in which he was, it is true, interested, in a fictitious or suspense account called "Bond Account." This, clearly, did not make it school-district money. The funds remained in that account until the failure. No steps were taken to withdraw the money from this banking firm. Not even a book transfer was made. How, then, can it be said that it was paid to the school district? The delivery of the bonds as obligations of the district was not authorized except on receipt of the money by French as assessor. He never received the money in that capacity, and the bonds never became an obligation of the district.

The decree should be reversed, and the bill dismissed, with costs of both courts to defendant.

GRANT, J. I think there are two important questions of fact in this case upon the answers to which the result largely depends, viz.:

1. When were the bonds for the $3,500 signed and delivered to Mr. French?

2. Had defendant school district, through its officers, information that its assessor, French, had received the money from complainant with which to pay for these bonds?

There is a sharp conflict of testimony upon the first question. The circuit judge evidently found that these bonds were delivered to French before the 12th of July. I think this is the correct conclusion. Complainant and Mr. De Vere Hall both swear positively that in their interview with Mr. Nauman, the moderator, on July 27th, Mr. Nauman told them that these bonds were executed and delivered to Mr. French before the 11th of July. Mr. Hall took a memorandum of that conversation in the presence of Mr. Nauman and complainant. Mr. White, the director, testified that he had made out and signed the bonds the first part of July, and left them with Mr. French. The testimony of Mr. White and Mr. Nauman is in direct conflict upon one point: Mr. Nauman testi-

fied that he left West Branch on the morning of the 19th and returned on the 23d of July; that he asked Mr. White, before leaving, if these bonds for $3,500 were ready for him to sign; and that Mr. White told him "he was too busy that morning, and that they were not completed." According to Mr. White's testimony, he had signed the bonds, and left them with Mr. French, the assessor, to procure Mr. Nauman's signature. Mr. French sent a package of bonds, during the early part of July, to Mr. Nauman to sign. The witness (one Quackenbush) who took them to Nauman testified that it might have been 10 or it might have been 20 days before the failure of M. H. French & Co. They were signed and returned. If a package of bonds was sent before the middle of July to Mr. Nauman to sign, it was these bonds. It could not have been the other issue, because the voters of the district did not vote to issue those until the evening of July 11th, the board did not authorize them until the meeting of the 12th, and on July 14th French wrote complainant that the bonds for the $6,000 were being made out by the school officers. Mr. Nauman testified that he told complainant and Mr. Hall that he signed the bonds for the $3,500 on the 23d of July. If he signed bonds upon that day, I think it a fair deduction that he is now mistaken, and that it was the $6,000 bonds that he signed.

I think the second question must be answered in the affirmative. Mr. French testified that he advised the board as early as July 12th that he had the money, not only for these bonds, but for the others. It was natural that he should do so, and that they should inquire, for they were in haste to get the money. The board knew that he had the money for the other bonds, for Mr. White, the director, obtained a draft for their purchase from Mr. French, and had the old bonds in his possession at the time the bank failed.

The situation, then, is this: Mr. French was the assessor of the district, the proper custodian of its funds, and the

officer authorized to receive the funds belonging to it. He was authorized by the district to solicit bids for the purchase of these bonds. He wrote complainant, not on behalf of M. H. French & Co., but as an individual, informing him of the proposition of the board to issue these bonds, and solicited him to bid. He made a bid. It was submitted to the board, was accepted, and the bonds directed to be delivered upon the receipt of the money. It was the understanding of all members of the board that the money would come into the hands of Mr. French as assessor. Mr. Nauman testified, "I considered it French's work to look after those bonds,— to get the money from McCurdy on the bonds." Mr. White, the director, testified that he expected Mr. French to receive the money; that he knew it was his place to receive it. If Mr. French was acting as agent of complainant, he was also acting as the agent for the defendant. The defendant knew the dual capacity in which French was acting, while complainant did not. The bonds were delivered, then, to Mr. French, not as the agent for the school district, but as the agent of complainant, to hold subject to his order, provided he had the money. He did have the money. He had deposited it in the bank where the defendant kept its account and deposited all its funds. In my judgment, it makes no difference that he had seen fit to enter it in a suspense account called "Bond Account." If that was the account of any particular party, it was the account of the district; it was not an account with the complainant. I am unable to see that the result would have been any different if Mr. French or the banking house of French & Co. had caused this amount to be transferred to the account of Mr. French as assessor. .Probably neither complainant nor defendant knew of entering this money under the head of "Bond Account." The bonds were in the bank under the instructions from complainant to French to hold them for him subject to his order. They were not, then, in his possession for the district. The money was. The district knew, as already stated, that French was acting as their agent,

as well as complainant's.   They knew, or should have known, the difficulties that might arise upon questions of delivery and agency.   It was in their power, and therefore their duty, to see that the business was so conducted as to leave no doubt in regard to the transaction.   It was not the duty of complainant, for he had no knowledge that French was acting for the district as well as for himself.   As between two innocent parties, the district must suffer.

The decree is affirmed.

HOOKER, MOORE, and LONG, JJ., concurred with GRANT, J.